**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |
|---|
| In re:<br><br>Larisa Markus,<br><br>Debtor in a Foreign Proceeding. |

**FOR PUBLICATION**

Case No. 19-10096 (MG)

Chapter 15

---

### MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS ON VICTOR A. WORMS, ESQ. ON REMAND BASED ON CIVIL CONTEMPT

*A P P E A R A N C E S:*

LAW OFFICES OF VICTOR A. WORMS
*Attorneys for Foreign Debtor Larisa Markus*
48 Wall Street, Suite 1100
New York, NY 10005
By: Victor A. Worms, Esq.

MARKS & SOKOLOV, LLC
*Attorneys for Yuri Vladimirovich Rozhkov in his Capacity*
*as Trustee and Foreign Representative*
*for the Foreign Debtor Larisa Markus*
1835 Market Street, 17th Floor
Philadelphia, PA 19103
By:   Bruce S. Marks, Esq.
        Nina Farzana Khan, Esq.
                    -and-
ARCHER & GREINER, P.C.,
630 Third Avenue
New York, NY 10017
By:   Gerard DiConza, Esq.
        Lance A. Schildkraut, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two issues on remand from the District Court's decision on appeal in

the case of *Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) [hereinafter, "*Appeal Decision*"].

On April 13, 2020, the Court entered an order setting the schedule for remand briefing.  (ECF

Doc. # 266.)  On April 24, 2020, the Markus Foreign Representative ("FR") filed his brief.  ("FR

Remand Brief," ECF Doc. # 270.)  On May 15, 2020, Victor A. Worms, Esq. ("Worms"), counsel to Chapter 15 debtor Larisa Markus ("Markus"), filed his brief.  ("Worms Remand Brief," ECF Doc. # 273.)  The Court concludes that a decision on remand can be rendered without the necessity of oral argument.

For the reasons discussed below, the Court **FINDS and CONCLUDES as follows:**

**(1)** Sanctions should be imposed on Worms in the amount of $55,000 for 55 days of noncompliance with the Discovery Order (defined below) from October 3, 2019 until his contempt was purged on November 27, 2019 by virtue of the Bykov Communication (defined below);

**(2)** The Fees Order was properly issued pursuant to the Court's inherent authority and the FR is entitled an award of attorneys' fees in the reduced amount of $36,600;[1] and

**(3)** Additional compensatory sanctions should be awarded to the FR against Worms in the amount of $63,500 for attorneys' fees that would not have been incurred by the FR after October 3, 2019 "but for" Worms' willful bad faith conduct.

## I.    BACKGROUND

### A.  The Sanctions Order and Fees Order

On October 8, 2019, the Court entered an Order imposing sanctions on Worms, counsel of record for the foreign debtor Markus, following a hearing on October 3, 2019 at which the Court explained that an Order imposing sanctions against Worms would be entered because of his knowing and willful failure to provide discovery required by a subpoena served on Worms on behalf of Markus on June 25, 2019.  ("Sanctions Order," ECF Doc. # 157.)  The Sanctions Order resulted from granting the FR's Motion for Sanctions against Worms and Markus. ("Sanctions

---

[1]       The Fees Order initially awarded the FR fees in the amount of $60,000.

Motion," ECF Doc. # 136.)  The FR argued that sanctions should be awarded against Worms and Markus pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii) and (b)(2)(C).  The FR also requested that the Court hold Worms in contempt for failure to comply with the subpoena.

Worms opposed the FR's motion and filed a cross-motion against the FR and his attorney, Bruce S. Marks, Esq., seeking sanctions under Rule 11 for frivolous conduct and unlawful discovery.  ("Worms Sanctions Opposition," ECF Doc. # 138-4.)  (The Court denied Worms' cross-motion during the October 3, 2019 hearing on the grounds that the cross-motion was frivolous.)

The FR filed a reply, arguing that the Recognition Order and subsequent orders by this Court require Worms to comply with the subpoena.  ("Sanctions Reply," ECF Doc. # 139 at 6–7.)  The Court denied Worms' Motion to Quash Subpoena on July 30, 2019; the order denying Worms' motion also required Worms to "immediately communicate with Markus and her agents, including attorneys, to obtain and produce responsive documents . . . to the extent the documents are in Markus' possession, custody, or control."  (*See* "Discovery Order," ECF Doc. # 107.)

On October 16, 2019, the Court issued the Sanctions Opinion, elaborating on the findings of fact and conclusions of law in the Sanctions Order, finding that Worms' misconduct in violating the discovery orders was knowing, willful and intentional.  (ECF Doc. # 164; *In re Markus*, 607 B.R. 379 (Bankr. S.D.N.Y. 2019) [hereinafter, "*Sanctions Opinion*"].)  The Sanctions Order imposed monetary sanctions (the "Per Diem Sanctions") on Worms in the amount of $1,000 per day from September 5, 2019 until Worms complies with the Court's discovery orders.  On October 16, 2019, Worms filed a notice of appeal from the Sanctions Order.  (ECF Doc. # 165.)

On October 23, 2019, the FR moved for an award of attorneys' fees for the fees incurred in making the Sanctions Motion. ("FR's Declaration in Support of Fees," ECF Doc. # 176.) Worms opposed the FR's request for fees. ("Worms Opposition to Fees," ECF Doc. # 190.) On November 7, 2019, the Court granted the FR's motion for fees, awarding $60,000 in attorneys' fees against Worms in connection with the Sanctions Order. ("Fees Order," ECF Doc. # 200.) Worms also appealed the Fees Order. (ECF Doc. # 204.)

### B. The Bykov Communication

The Court's Discovery Order unambiguously required Worms to contact Markus' agents to obtain documents within Markus' "possession, custody and control" that were responsive to the subpoena served on Worms on behalf of Markus on June 25, 2019 (the "Markus Subpoena"). ("FR's Stay Opposition," Case No. 19-cv-09611 (LJL) [hereinafter, "District Court"] ECF Doc. # 5 at 5.)

However, on October 17, 2019, the Court held a hearing (the "October 17 Hearing") during which the FR proposed that Ilya Bykov ("Bykov") contact the attorneys and agents he instructed on behalf of Markus, pursuant to the power of attorney issued by Markus to Bykov, and request that the attorneys and agents produce any documents in their possession, custody, or control that are responsive to the Markus Subpoena. (Oct. 17, 2019 Hr'g Tr., ECF Doc. # 171 at 88:4–12.) At the October 17 Hearing, Daniel A. Singer, Esq. ("Singer"), counsel of record for Bykov, the LM Entities, and the Protax Entities, represented that he had an agreement from Bykov to send a letter, pursuant to the power of attorney issued by Markus, requesting production of documents proposed by the FR. (*Id.* at 88–89.)

On November 21, 2019, based upon representations made by the FR and Singer at the October 17 Hearing, the Court entered an order directing Bykov to communicate (the "Bykov

Communication") with Markus' known agents and request all documents, information, and communications concerning Markus' assets that are responsive to the Markus Subpoena that are in the possession, custody or control of such agents. ("Bykov Communication Order," ECF Doc. # 214 ¶ 2.) The Bykov Communication Order directed the Bykov Communication be sent within seven (7) days of November 21, 2019. (*Id.* ¶ 4.)

## II.   <u>ISSUES ON REMAND</u>

**Issue 1**: The Sanctions Order was affirmed by the District Court to the extent that this Court exercised its inherent authority to sanction Worms for noncompliance with discovery orders and remanded for this Court to determine the amount of sanctions, calculated at $1,000 per day, that should be imposed on Worms. (*Appeal Decision* at 714–15.) "[T]he portion of the Sanctions Order imposing lump-sum retroactive sanctions in the amount of $34,000 [was] improperly criminal in nature and [was] therefore vacated" by the District Court. (*Id.* at 715.)

**Issue 2**: The Fees Order was vacated by the District Court and remanded for this Court to assess and ensure that, in light of the *Appeal Decision*, the Fees Order was issued pursuant to proper authority—*i.e.*, whether the Fees Order was issued pursuant to Rule 37 of the Federal Rules of Civil Procedure or the Court's inherent authority. (*Id.* at 717.)

**Issue 3**: The FR also requests that the Court impose $115,000 in additional compensatory sanctions against Worms for attorneys' fees that the FR argues would not have been incurred after October 3, 2019 "but for" Worms' bad faith conduct. (FR Remand Brief at 5.)

### III. APPEAL DECISION

As previously stated, Worms appealed the Sanctions Order and the Fees Order. The appeals were combined, and jointly addressed by Judge Liman in the *Appeal Decision*, the relevant and applicable findings of which are summarized below.

#### A. Common Issues on Appeal – Rule 37 Could Not Be Used to Hold Worms in Contempt

As to common issues presented in the Sanctions appeal and the Fees appeal, Judge Liman found that Rule 37 sanctions are available in Chapter 15 proceedings but could not be used to hold Worms in contempt because Markus was not a "party" to the FR's Sanctions Motion under Rule 37. (*Appeal Decision* at 701–04.)

First, Worms argued that the Sanctions Order was invalid because it was predicated on Rule 37, which Worms interpreted as not ever applying to Chapter 15 proceedings. (*Id.* at 698.) The FR countered that Rule 37 sanctions are available in Chapter 15 proceedings. (*Id.*) Judge Liman rejected Worms' argument and held that Rule 37 applies to Chapter 15 contested matters when a party in interest moves for an order of contempt, as is the situation here. (*Id.* at 700.)

Second, Worms argued that, even if Rule 37 applies in a Chapter 15 proceeding, he cannot be sanctioned because he (as an attorney) is not a party. (*Id.*) The FR countered that numerous courts have sanctioned attorneys under Rule 37. (*Id.*) Judge Liman rejected Worms' argument and held that the Bankruptcy Court properly read Rule 37 to cover attorneys advising parties as well as the parties themselves. (*Id.* at 701.)

Third, Worms argued that he could not be sanctioned under Rule 37 because the Subpoena was not directed to his client, Markus, as a "party" to the Chapter 15 proceeding, but rather was served on her as a non-party pursuant to Rule 45. (*Id.*) The FR acknowledged that Rule 37 does not normally apply to Rule 45 subpoenas served on non-parties but argued that

Rule 37 applied here because Markus is a party to the contested matter arising under the Chapter 15 case. (*Id.* at 702.) Judge Liman found no reason to believe that Markus, as the debtor in a Chapter 15 proceeding, was a "party" to the FR's Sanctions Motion under Rule 37 and held that the FR cannot use Rule 37 to hold Worms in contempt. (*Id.* at 703–04.) Judge Liman reasoned that the FR made the decision to serve Markus with a Rule 45 subpoena and the Bankruptcy Court endorsed that decision in the Discovery Order—having chosen to serve a Rule 45 subpoena, and not having treated Markus as a party upon whom a discovery request must be served under Rule 26, the FR must live with the consequences. (*Id.*) Judge Liman stated that the Bankruptcy Court's inability to sanction Worms under Rule 37 is relevant to the Sanctions Order and the Fees Order. (*Id.*)

### B. Sanctions Order is Affirmed in Part and Vacated in Part

In the *Appeal Decision*, Judge Liman (i) vacated the retroactive sanctions in the amount of $34,000 (the "Lump-Sum Sanctions") because he found them to be criminal in nature and (ii) affirmed the Per Diem Sanctions as civil in nature and remanded to this Court for the purpose of determining the amount that should be imposed on Worms for his failure to comply with discovery orders. (*Id.* at 714–15.)

With respect to the Sanctions Order, individually, Worms did not argue that he in fact complied with the Discovery Order. (*Id.* at 704–05.) Rather, Worms argued that the Bankruptcy Court erred in sanctioning him because the FR did not satisfy its burden of demonstrating that the documents requested in the Markus Subpoena were in Markus's possession, custody, or control. (*Id.* at 705.) Judge Liman held that the Bankruptcy Court did not err in concluding that the Markus Subpoena properly compelled production of documents from third parties with

7

agency relationships to Markus and that Worms failed to comply with the Markus Subpoena and/or the Discovery Order without justification. (*Id.* at 707.)

Worms also challenged the legal authority—Rule 37 and inherent power—pursuant to which the Bankruptcy Court issued the Sanctions Order. First, Judge Liman found that Worms' noncompliance with Bankruptcy Court orders did not warrant Rule 37 sanctions because the Bankruptcy Court's orders were issued to enforce a Rule 45 subpoena that was served on a non-party. (*Id.* at 708.)

The District Court then considered whether the Sanctions Order could be affirmed based on its invocation of the Bankruptcy Court's inherent power. (*Id.*) Because due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions, an attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges. (*Id.* at 707 (*citing In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000).) Judge Liman rejected Worms' argument that he did not know or have an opportunity to respond to the threat of being sanctioned pursuant to the Bankruptcy Court's inherent authority. (*Id.* at 708–10.)

Worms also argued that the Bankruptcy Court's inherent authority cannot provide a basis to sanction him because, according to Worms, the Bankruptcy Court's inherent authority derives from section 105(a), which limits the Court's powers to those necessary or appropriate to carry out the provisions of the Bankruptcy Code and, here, there was no assertion that Worms violated any sections of the Bankruptcy Code. (*Id.* at 709–10.) Judge Liman stated that Worms was incorrect to look at section 105(a). (*Id.* at 710.) Citing *In re Sanchez*, 941 F.3d 625 (2d Cir.

2019), Judge Liman found that Worms' argument—that the inherent authority of a bankruptcy court is far more restricted than a district court because that inherent authority is defined by statute—ignores binding circuit authority. (*Id.*) Judge Liman found that the Bankruptcy Court had "inherent sanctioning powers." (*Id.* (citing *In re Sanchez*, 941 F.3d at 627).)

Next, the District Court considered whether the Bankruptcy Court properly found that the FR established by clear and convincing evidence that Worms violated the discovery orders, as is required for a contempt order issued pursuant to a court's inherent authority. (*Id.* (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).) "More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* When reviewing the imposition of sanctions, courts ordinarily consider: (1) the willfulness of the conduct, (2) the efficacy of lesser sanctions, (3) the duration of the non-compliance, and (4) whether the litigant was warned of the consequences of non-compliance. (*Id.* (citing *Agiwal v. Mid Island Mort. Corp.*, 555 F.3d 298, 302–03 (2d Cir. 2009)).) Judge Liman considered each of these requirements and concluded that the Bankruptcy Court's factual findings with respect to each of the elements were all supported by the record. (*Id.* at 710–11.) Accordingly, Judge Liman held that there was no basis to disturb the Bankruptcy Court's exercise of its inherent authority to sanction Worms. (*Id.* at 711.)

Finally, Worms argued that the Sanctions Order improperly held him in criminal contempt, in violation of his due process rights, and in excess of the Bankruptcy Court's jurisdiction. (*Id.* at 712.) Specifically, Worms objected to the following portion of the Sanctions Order:

> NOW, THEREFORE, within fourteen (14) days from the date of this Order, as a sanction based on Mr. Worms' failure to comply with discovery orders

> issued by this Court, Mr. Worms is directed to pay to the Clerk of the United States Bankruptcy Court for the Southern District of New York $1,000 per day or a total of $34,000 since his non-compliance on September 4, 2019 .
> . . .

(*Id.* (citing Sanctions Order at 2).)

With respect to this issue, Judge Liman found that the Bankruptcy Court could not properly have imposed criminal sanctions on Worms because the Court applied a "clear and convincing" evidence standard, rather than finding Worms guilty of contempt "beyond a reasonable doubt." (*Id.* (citing *Sanctions Opinion* at 396); *see also Matter of Ngan Gung Rest., Inc.*, 195 B.R. at 593, 597 (S.D.N.Y. 1996) ("In this case, the Bankruptcy Court found the debtor guilty of contempt only by 'clear and convincing evidence,' and not 'beyond a reasonable doubt,' which would be required for a finding of criminal liability.").)

Having determined that the Bankruptcy Court could not have properly issued criminal sanctions here, Judge Liman turned to whether the sanctions imposed on Worms were criminal or civil in nature. (*Appeal Decision* at 711–12.) "Criminal contempt is a crime in the ordinary sense." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.* "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved. Thus, a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the [sanction] is punitive, to vindicate the authority of the court.'" *Bagwell*, 512 U.S. at 827–28 (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911)).

10

First, Judge Liman found that the Bankruptcy Court expressly and repeatedly labeled its sanctions as civil. (*Appeal Decision* at 712 (citing *Sanctions Opinion* at 394–95 (discussing the power to impose civil contempt sanctions and describing the standards for imposing civil contempt)).) Moreover, the Bankruptcy Court's stated purpose for imposing the sanctions was to coerce Worms into compliance. (*Id.* (citing *Sanctions Opinion* at 397).) Judge Liman stated that these features favor construing the sanctions as civil. (*Id.* at 713.) However, because the stated purposes of a contempt sanction alone cannot be determinative (*see Gompers*, 221 U.S. at 444), Judge Liman then turned to address the nature of the fine imposed on Worms. (*Appeal Decision* at 713.)

Courts look at several factors to determine if a sanction is criminal or civil "including whether the sanction is intended to be compensatory or punitive; whether it is payable to the court or to the injured party; whether it is based on past wrongful conduct or is intended to coerce future compliance; and whether any opportunity to purge the sanction is provided." *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000). A sanction "is considered civil and remedial if it either coerces the defendant into compliance with the court's order, or . . . compensates the complainant for losses sustained. Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829. The Bankruptcy Court ordered Worms to pay two different fines:

> (1) Worms was ordered "to pay to the Clerk of the United States Bankruptcy Court for the Southern District of New York $1,000 per day or a total of $34,000 since his non-compliance on September 4, 2019"; and

> (2) Worms was "further ordered to pay $1,000 per day going forward for each day that he fails to comply with [the Bankruptcy] Court's discovery orders."

(Sanctions Order at 2.)

Judge Liman held that the second fine, the Per Diem Sanctions, were plainly civil in nature because Worms' opportunity to comply with the discovery orders afforded him an opportunity to purge his contempt. (*Appeal Decision* at 713 (citing *Bagwell*, 512 U.S. at 829 (explaining that "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order . . . exert[s] a constant coercive pressure" such that "once the [judicial] command is obeyed, the future, indefinite, daily fines are purged")).) As previously stated, Judge Liman affirmed this Court's decision to impose the Per Diem Sanctions pursuant to its inherent authority and remanded for a determination of the amount that should be imposed in light of the *Appeal Decision*. (*Id.* at 714–15.)

As to the first fine, the Lump-Sum Sanctions, Judge Liman stated that the question turned on Worms' inability to avoid or diminish the fine with particular focus placed on the fact that the fine was payable to the Clerk of the Court rather than to the FR. (*Id.* at 713.) First, Judge Liman found that Worms could not diminish the Lump-Sum Sanctions because the Sanctions Order indicates that the $34,000 is a fixed fine. (*Id.* at 713–14.) Judge Liman then considered whether the Lump-Sum Sanctions were compensatory—a necessary component for the Sanctions Order to be affirmed based on the Bankruptcy Court's inherent authority. Judge Liman found that the Lump-Sum Sanctions were not compensatory because it did not attempt to make the FR whole— the party who unfairly incurred damages as a result of Worms' noncompliance—nor did it compensate the judicial system for costs associated with the noncompliance. (*Id.* at 714.) Rather, the Lump-Sum Sanctions were payable to the Clerk of the Court "for unspecified reasons." (*Id.*) Further, Judge Liman found that the Bankruptcy Court implied that the $29,000 portion of the Lump-Sum Sanctions was punitive in nature when it explained:

> The sanctions that I am awarding today against Mr. Worms are for flagrant violations of Court orders. And that is an affront to the federal court, and

> for that reason, those sanctions are payable to the clerk of the United States
> Bankruptcy Court for the Southern District of New York.

(*Id.* (citing Oct. 3, 2019 Hr'g Tr., ECF Doc. # 160 at 70:7–14).)  Accordingly, Judge Liman held

that the Lump-Sum Sanctions were improperly criminal in nature and vacated that portion of the

Sanctions Order.  (*Id.*)

### C.  Fees Order

Finally, Judge Liman addressed the Fees Order and reviewed for abuse of discretion.  (*Id.*

at 715.)  "A bankruptcy court exceeds its allowable discretion where its decision (1) rest[s] on an

error of law (such as application of the wrong legal principle) or a clearly erroneous factual

finding, or (2) cannot be located within the range of permissible decisions, even if it is not

necessarily the product of a legal error or a clearly erroneous factual finding."  (*Id.* (quoting

*Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 73 (2d Cir. 2007)).)  First, Judge Liman found

that the Bankruptcy Court did not abuse its discretion in calculating the $60,000 fee amount

awarded to the FR.  (*Id.* at 716.)  While Worms argued that the Bankruptcy Court's finding of

contempt required an evidentiary hearing, Worms did not contest any of the billing practices or

time entries described in the FR's motion.  (*Id.* (citing *Schlaifer Nance & Co. v. Estate of

Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("We have held that the opportunity to be heard does

not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing.")).)

Judge Liman considered whether the Bankruptcy Court abused its discretion by awarding

$60,000 in attorneys' fees in connection with the FR's Sanctions Motion.  (*Id.*)  Here, Judge

Liman focused on the FR's emphasis in the Sanctions Motion of the mandatory nature of the

Rule 37 with respect to the payment of attorneys' fees by the party who fails to obey a discovery

order.  (*Id.* at 716–17.)  By contrast to Rule 37, there is no mandatory award of attorneys' fees

when a court imposes sanctions pursuant to its inherent authority.  (*Id.* at 717.)  Judge Liman

13

vacated the Fees Order and remanded to ensure that it was issued pursuant to proper authority—
*i.e.*, whether the Fees Order was issued pursuant to Rule 37 of the Federal Rules of Civil
Procedure or the Court's inherent authority.  (*Id.*)

## IV.     ARGUMENTS ON REMAND

### A.  FR Remand Brief

On remand, the FR requests that, pursuant to its inherent authority, the Court: (i) impose
sanctions on Worms from October 3, 2019 onward in an amount not less than $204,000; (ii)
affirm the $60,000 Fees Order; and (iii) impose an additional $115,000 in compensatory
sanctions for attorneys' fees, which would not have been incurred after October 3, 2019 "but for"
Worms' bad faith conduct.  (FR Remand Brief at 5.)  The FR also argues that Worms should not
avoid paying post October 3, 2019 attorneys' fees based on any alleged financial circumstances.
(*Id.*)

#### 1.  FR's Sanctions Argument – Issue 1 on Remand

The FR requests, *inter alia*, that "pursuant to its inherent authority, the Court" impose
sanctions in the amount of $204,000, representing $1,000/day in sanctions on Worms from
October 3, 2019—the date that sanctions were first imposed on Worms—until April 24, 2020—
the date on which the FR Remand Brief was filed.  (*Id.* at 7.)  The FR argues that sanctions
should be imposed because Worms "thumbed his nose at the Court" by not complying with the
Sanctions Order.  (*Id.* at 6.)  The FR asserts that he was able to uncover additional assets via
other means that did not involve the affirmative actions of Worms, including seven bank
accounts at four banks holding more than $3 million in Switzerland, as well as office buildings in
Germany and a hotel in Netherlands.  (*Id*. (citing Sokolov Declaration, Ex. 1).)  Worms' lack of
compliance with the Discover Order has resulted in the FR being uncertain as to whether "other

assets may have been discovered." (*Id.*) The FR rests his arguments on the Court's inherent authority to impose sanctions where "foot-dragging [was] used in an effort to prevent [a party] from getting at records that were relevant to the central issue of the case." (*Id.* at 6–7 (quoting *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 392 (2d Cir. 1981)).)

The FR notes that he showed "a willingness to have the per diem monetary sanctions terminated [on] October 30, 2019 if Worms complied with the Sanctions and Fees Orders and Bykov cooperated" but the FR submits that neither condition occurred. (*Id.* at 7.) Moreover, the FR states that he had to "seek Court intervention to get the requested discovery from Bykov" which provided the unhelpful January 6, 2020 production. (*Id.*) The FR asserts that, at minimum, Worms should have "communicated with Markus through her Russian attorneys to identify her assets and agents who administer them" which would have provided the information obtained via the Bykov Communication. (*Id.*) The FR recognizes that the sanctionable amount is to be determined by the Court but proposes that "the amount can be reduced by attorneys' fees paid by Worms to the FR so that the total sanctions amount . . . is not excessive." (*Id.*) Finally, the FR recognizes that while the District Court set aside the $34,000 Lump-Sum Sanctions imposed for Worms' conduct prior to October 3, 2019, "the Court could not have been clearer that this Court's finding of contempt" was for a civil sanction rather than a criminal one. (*Id.*)

2. FR Argues the Court Should Affirm $60,00 Fees Order – Issue 2 on Remand

The FR argues that the Court should confirm that the $60,000 awarded under the Fees Order was issued pursuant to its inherent authority because "[t]his Court cited to numerous cases based on inherent authority in support of the Sanctions and Fees Orders, evidencing both decisions are supported by inherent authority." (*Id.* at 7–8 (citing *Sanctions Opinion* at 394).) The FR provides, by way of example, three such cases cited in the *Sanctions Opinion*: *Bagwell*,

512 U.S. 821 (1994) (inherent authority); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) (same); *In re MF Glob. Holdings Ltd.*, 560 B.R. 41 (Bankr. S.D.N.Y. 2017) (same).[2]  The FR submits that "[t]here is no doubt 'the fees would not have been incurred but for [Worms'] bad faith.'"  (FR Remand Brief at 8 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1184 (2017) (reaffirming attorneys' fees incurred stemming from bad faith may be awarded under inherent authority)).)

### 3.  FR Argues that Additional Attorneys' Fees Should be Awarded

The FR requests that the Court impose $115,000 in additional compensatory sanctions against Worms for attorneys' fees that the FR argues would not have been incurred after October 3, 2019 "but for" Worms' bad faith.  (FR Remand Brief at 5.)  The FR submits that the Court's inherent power extends to awarding attorneys' fees incurred on appeal and that the fees of $115,000 which the FR incurred were reasonable and necessary.  (*Id.* at 8–11.)

### a.  FR Argues that Inherent Power Extends to Awarding Fees Incurred on Appeal

First, the FR argues that the Court's inherent power to award attorneys' fees extends to attorneys' fees incurred on appeal defending the Sanctions Order and Fee Order.  (*Id.* at 9 (citing *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (reversing failure to award attorneys' fees incurred on appeal)).)  The FR submits that he need only show that the fees "would not have been incurred but for the bad faith" of the contemnor.  (*Id.* (quoting *Goodyear Tire & Rubber Co.*, 137 S.Ct. at 1184).)  The FR further provides that:

> [w]hen deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct. . . . Thus, while willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them.  Indeed, to survive review in this court, a district court, having found willful contempt, would need to

---

[2]      *See* FR Remand Brief at 8 n.4.

16

> articulate persuasive ground for any denial of compensation for the
> reasonable legal costs of the victim of contempt.

(*Id.* at 9–10 (quoting *Weitzman*, 98 F.3d at 719).)

Additionally, the FR cites to a Sixth Circuit decision that affirmed a district court's

holding that the bankruptcy court did not abuse its discretion where it awarded attorneys' fees

incurred on appeal resulting from "the plaintiff's unsuccessful appeals of the orders holding them

in contempt." (*Id.* at 10 (quoting *Liberis v. Craig*, No. 87-5321, 1988 U.S. App. LEXIS 5455, at

*21–22 (6th Cir. Apr. 25, 1988).) The FR further argues that "[t]he question is not . . . whether

[an] appeal was made in bad faith, but whether [the] unsuccessful appeal stemmed directly from

his intentional disregard of the initial order." (*Id.* (quoting *Williamson v. Recovery Ltd. P'ship*,

Case No. 2:06-cv-00292, 2017 U.S. Dist. LEXIS 49086, at *12 (S.D. Ohio Mar. 31, 2017).) The

FR argues that such circumstances are presently before the Court and, accordingly, the Court can

"sanction the contemnor for 'hampering the enforcement of a court order in bad faith' when the

'hampered' order is that court's 'own' order." (*Id.* (quoting *Williamson*, 2017 U.S. Dist. LEXIS

49086, at *12).)

Lastly, the FR argues that this case mirrors *Liberis*: this Court has the inherent authority

to award attorneys' fees; the FR was forced to defend Worms' challenges to the Sanctions and

Fees Orders before the District Court on appeal; and the costs incurred by the FR "were a direct

result" of Worms' "initial contumacious conduct." (*Id.* at 11 (quoting *Liberis*, 1988 U.S. App.

LEXIS 5455 (affirming $36,984.69 in fees and expenses for defending contempt order on appeal

before district court and Circuit Court)); *see also Williamson*, 2017 U.S. Dist. LEXIS 49086

(awarding over $59,000 in fees incurred on appeal in defending order imposing sanctions under

inherent authority).)

          b. *FR Argues that $115,000 Fees Incurred were Reasonable and Necessary*

The FR submits that after October 3, 2019, he incurred $129,342.50 in fees which would not have been incurred but for Worms' bad faith misconduct. (FR Remand Brief at 12 (citing Second Marks Fee Declaration, Ex. 2, Appx. A (chart of Worms' conduct)).) The FR states, however, that he is taking a conservative approach and is seeking just $115,000 in fees as compensation even though all billable hours were justified and reasonable. (*Id.*) The FR's Remand Brief includes a chart detailing the fees incurred after October 3, 2019. (*Id.*) The FR states that he is not seeking $11,520 incurred in responding to Worms' Motion on appeal to stay the Fees Order because much of the work for opposing the stay was used by the FR in its brief related to the fees appeal. (*Id.* at n.5.) The FR argues that the fees are reasonable because he successfully defeated Worms' appeal of both the Sanctions Order and Fees Order. (*Id.* at 11–12.) The FR argues that the fees are necessary because they "would not have been incurred 'but for' Worms' 'bad faith' misconduct." (*Id.* at 12.)

          4. <u>FR Argues that Worms' Alleged Financial Circumstances Should Not Permit Him to Avoid the New Compensatory Sanctions Caused by His Bad Faith Conduct</u>

The FR argues that Worms' alleged financial situation is not an excuse to allow him to avoid new sanctions, since they were imposed due to his bad faith conduct and frivolous litigating. (*Id.* at 15.) The FR acknowledges that courts do consider a party's financial resources when imposing sanctions. (*Id.*) However, the FR argues that financial resources should only be considered if the imposed sanctions will pose an unreasonable burden. (*Id.* (citing *Truong v. Hung Thi Nguyen*, 10 Civ. 386 (DAB), 2013 U.S. Dist. LEXIS 121037, at *16 (S.D.N.Y. Aug. 22, 2013)).) The FR submits that financial resources should not be considered here because "the imposition of attorneys' fees under inherent authority implicates equitable considerations." (*Id.*)

The "imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself." (*Id.* (citing *Chambers v. NASCO*, 501 U.S. 32, 46 (1991)).)  The FR argues that since Worms made no effort to comply with the Discovery Order and acted in bad faith, the Court should consider this relative to the relief he seeks.  (*Id.* at 16 (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).)

The FR further argues that if the Court does consider Worms' financial situation to determine if the sanctions would be burdensome, the Court should require Worms to sustain his burden with "hard data." (*Id.*)  The FR states that to prove an alleged financial burden, courts have required contemnors to "submit a sworn affidavit, valid and accurate personal financial records (including tax returns), and any other truthful and relevant supporting documents, which explain any financial circumstances that demonstrate why [they] cannot pay in full . . ." (*Id.* at 15 (citing *Truong*, 2013 U.S. Dist. LEXIS 121037, at *16).)  When determining the financial burden that Worms would face, the FR urges the Court to consider the public's faith in the judicial system and how the bar would be negatively impacted if Worms were to escape the imposed sanctions, as it would be an example of an attorney being treated leniently.  (*Id.* at 16.)  The FR emphasizes that the Court, in making its determination, should consider that Worms' behavior was voluntary and that he brought this financial burden onto himself by litigating in bad faith.  (*Id.*)  The FR argues that if Worms does meet the heavy standard of proving an unreasonable financial burden, the Court should at most "extend the time period for payment of new, full compensatory sanctions for Worms instead of reducing the sanctions amount." (*Id.* at 17.)

### B. Worms Remand Brief

On remand, Worms argues that (i) the FR is not entitled to any award of sanctions or legal fees based upon the Mandate Rule and (ii) the $60,000 in legal fees awarded to the FR pursuant to the Fees Order cannot be reinstated by the Bankruptcy Court because it is undisputed that the FR relied exclusively upon Rule 37 when he made the legal fees application.  (Worms Remand Brief at 6.)  The initial 20 pages of Worms' Remand Brief recount the various arguments he made before this Court and the District Court over the past year in opposition to the FR's discovery requests and in opposition to the Sanctions Order and Fees Order.  (*Id.* at 6–24.)  These include arguments raised on appeal and rejected by the District Court, specifically that the Bankruptcy Court's finding of contempt required an evidentiary hearing (*id.* at 10–14) and that the Bankruptcy Court's inherent authority is derived from section 105(a) of the Bankruptcy Code and, accordingly, cannot be used to issue the sanctions at issue (*id.* at 20–24).

1. Worms Argues that the FR is Not Entitled to Any Fees or Sanctions Under the Mandate Rule

Worms argues that the Mandate Rule precludes the Bankruptcy Court from awarding the Sanctions or Legal Fees to the FR.  (*Id.* at 25.)  Worms rests his argument on two cases.  Worms asserts that *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) states that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court."  (Worms Remand Brief at 25.)  Worms additionally states that the Second Circuit recently explained the Mandate Rule as follows:  (1) a lower court "must follow the mandate issued by an appellate court," (2) a district court cannot consider additional issues on remand, and (3) "where a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions."

(*Id.* (quoting *Puricelli v. Republic of Argentina*, 797 F.3d 213, 218 (2d Cir. 2015) (citations omitted)).

Regarding the amount of sanctions to be imposed on Worms pursuant to the Sanctions Order, Worms argues that the amount the FR submitted to the Court, $204,000, is in "direct contravention of the remand order" and thus is a violation of the Mandate Rule. (*Id.* at 26.) Additionally, Worms argues that the FR is not entitled to any legal fees for any of the arguments the FR prepared before the Bankruptcy Court because this would directly contradict the scope of the remand order and be in violation of the Mandate Rule. (*Id.*) Worms asserts that, per the confines of the Mandate Rule, if there is a party to be paid for his sanctionable conduct then it would be the Clerk of the Bankruptcy Court. (*Id.* at 27.)

### 2. Worms Argues that the Fees Order was Issued Pursuant to Rule 37—Not the Court's Inherent Authority

Worms argues that the Fees Order was improperly issued under Rule 37 rather than the Court's inherent authority. (*Id.* at 12.) Worms states that "it is undisputed that the [FR's] motion for legal fees . . . was explicitly based upon Federal Rule 37." (*Id.* at 19.) Worms argues that the Fees Order should be vacated because the "District Court specifically determined" that "Ms. Markus is not a party in the underlying Chapter 15 proceeding" and therefore Worms cannot be held in contempt of Federal Rule 37. (*Id.*)

Worms contends that the sanctions issued under Rule 37 require an evidentiary hearing and that no such hearing took place. (*Id.* at 12.) Worms also asserts that the Bankruptcy Court's "[o]pinion largely adopted, in many instances verbatim, the assertions and legal arguments which were presented . . . in the [FR's] motion" for sanctions and a finding of contempt against Worms pursuant to Rules 37 and 45. (*Id.* at 12–13.) Worms recounts, ad nauseum, the arguments contained in the brief he submitted to the District Court that he is not liable for any legal fees in

this Chapter 15 proceeding because he is not a party and that there was no finding that

Worms' client, Ms. Markus, "had failed to comply with discovery and that Worms

advised her not to comply with discovery." (*Id.* at 13.)

### 3. Worms Argues that Section 105(a) is the Legal Predicate for Civil Contempt, Not the Bankruptcy Court's Inherent Authority

Worms argues that under *In re Sanchez*, 941 F.3d at 627, a bankruptcy court "can impose

sanctions based upon its inherent authority but that authority is limited to the imposition of

relatively minor non-compensatory sanctions." (*Id.* at 22.) Worms submits that "a bankruptcy

court cannot exercise its contempt power under Section 105(a) of the Bankruptcy Code except

where there has been a violation of a provision of the Bankruptcy Code." (*Id.* at 23.) Using this

logic, Worms contends that the District Court "conflated the Bankruptcy Court's contempt

authority with its inherent authority to impose sanctions" and that the District Court wrongly

"concluded that the inherent authority of the Bankruptcy Court, an Article I court, was co-

extensive with that of an Article III court." (*Id.* at 24.) Worms includes the section 105(a)

argument in his Brief to support his position that this Court's inherent powers are limited and

that the Court cannot exercise its contempt powers here because there has been no violation of

the Bankruptcy Code.

Thus, Worms argues that the *Appeal Decision* forbids this Court from awarding sanctions

or legal fees to the FR because such an award would constitute a compensatory fine rather than a

coercive civil fine. (*Id.* at 25, 27.) In lieu of compensating the FR, Worms suggests that any fine

imposed upon him should be paid to the Clerk of the Bankruptcy Court, despite contesting the

validity of the fine altogether. (*Id.* at 27.)

4. <u>Worms Argues that the $1,000 Per Diem Sanctions are Unlawful and Must be Vacated as a Matter of Law</u>

Worms does not contend that the $1,000 Per Diem Sanctions are relatively more burdensome on him due to Worms' financial circumstances. Rather, Worms argues that the $1,000 Per Diem Sanctions are unlawful and must be vacated as a matter of law because the Court, in the *Sanctions Opinion*, did not apply or analyze the following three factors that courts in the Second Circuit must consider before imposing sanctions for civil contempt: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him. (*Id.* at 22–23 (quoting *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).) Worms recognizes that the Court did set forth the above factors in the *Sanctions Opinion*, but Worms appears to argue that the Sanctions Order imposed an unlawful penalty that must be vacated as a matter of law because the Court did not "explicitly consider" Worms' financial circumstances before imposing the sanctions, which Worms interprets *Dole* to require. (*Id.*)

## V.   <u>LEGAL STANDARD</u>

### A.  Inherent Authority

Federal courts have inherent powers not granted by rule or statute, so that they may manage their own affairs and achieve an orderly and expeditious outcome to a case. *Link v. Wabash R. Co.*, 370 U. S. 626, 630–631 (1962). In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may include imposing attorneys' fees. *Chambers*, 501 U.S. 32, 44–45 (1991). Federal courts are allowed to exercise their inherent power to assess such fees as a

23

sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or delays or disrupts the litigation or hampers a court order's enforcement. *Id.* at 45–46.

Granting attorney's fees through a court's inherent power requires a clear demonstration of bad faith. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1347 (2d Cir. 1991). There must be evidence on the record that the challenged actions are taken for improper purposes, such as harassment or delay and a high degree of specificity in the factual findings of the lower courts. *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). *See also Kerin v. U.S. Postal Service*, 218 F.3d 185, 192 (2d Cir. 2000) ("General characterizations of the nature of the losing party's behavior, unaccompanied by specific references to bad faith conduct, are not enough"). The attorney's actions must be so completely without merit "as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273. The Second Circuit interprets this standard restrictively. *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). *See, e.g.*, *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 41 (2d Cir. 1995) (declining to uphold attorney's fees even though the attorney's behavior was "hardly exemplary," since it was not possible to say with assurance that the actions were entirely meritless and motivated by improper purpose).

A person has acted in bad faith when he delays or disrupts litigation or hampers enforcement of a court order. *Chambers*, 501 U.S. at 44. Clear evidence of a conscious disregard of one's discovery obligations is also sufficient to find bad faith. *See, e.g.*, *Barney v. ConEd*, 99-cv-823 (KAM)(SMG), 2012 U.S. Dist. LEXIS 36100, at *19 (E.D.N.Y. Mar. 16, 2012) (holding a lawyer in contempt and requiring the payment of attorney's fees for not producing discovery documents pursuant to the court's inherent power); *Brick v. HSBC Bank USA*, 04-CV-0129E(F), 2004 U.S. Dist. LEXIS 16196 (W.D.N.Y Aug. 11, 2004) (upholding

24

attorneys' fees assessed under the Bankruptcy Court's inherent power for withholding and misrepresenting the completeness of discovery documents).

### B. Civil Contempt and Opportunity to Purge

In dicta, the United States Supreme Court discussed that a fine "is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks ex. Rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988). A civil contempt fine must afford the contemnor the ability "to purge the contempt and obtain his release by committing an affirmative act, and thus [the contemnor] 'carries the keys of his prison in his own pocket.'" *Bagwell*, 512 U.S. at 828 (quoting *Gompers*, 221 U.S. at 442 ); *see also United States v. United Mine Workers*, 330 U.S. 258, 305 (1947) (stating that a fine would be coercive, rather than punitive, where it was "conditioned on the defendant's failure to purge itself within a reasonable time.") "[B]ankruptcy courts, like Article III courts, possess inherent sanctioning powers. And, as relevant here, these include the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances." *In re Sanchez*, 941 F.3d. at 628. In *Leadsinger, Inc. v. Cole*, No. 05CV5606, 2006 U.S. Dist. LEXIS 55550, at *77 (S.D.N.Y. Aug. 4, 2006), the court held, *inter alia*, that a defendant who failed to comply with an earlier court order "shall be required to pay a fine to the Clerk of the Court . . . $500 for the first violation" and that the fine would double with each subsequent violation. The Second Circuit affirmed a district court's ruling that a party's civil fines, incurred in contempt of a court order, could be payable to the United States noting that "[t]he size of these fines does not compel the conclusion that the fines are punitive and criminal in the face of the strong indications that the fines are designed to coerce compliance

with the court's order, and may be escaped by defendants if they conform their conduct." *New York State NOW v. Terry*, 159 F.3d 86, 95 (2d Cir. 1998).

Another judge on this Court has found a debtor in contempt of a discovery order imposing sanctions at "$1,000.00 per day, *nunc pro tunc* . . . and continuing until" the debtor complied with the U.S. Trustees' discovery requests. *O'Toole v. Wrobel (In re Sledziejowski)*, Adv. No. 13-08317 (SHL), 2015 Bankr. LEXIS 1523, at *23 (Bankr. S.D.N.Y. May 4, 2015) (Lane, J.). This is similar to the Per Diem Sanctions of $1,000 placed on Worms until he complied with the Discovery Order. Compliance with a discovery order need only give the litigant "an opportunity to purge." *Bagwell*, 512 U.S. at 829. "[A] per diem fine imposed for each day a contemnor fails to comply with an affirmative court order . . . exert[s] a constant coercive pressure" such that "once the [judicial] command is obeyed, the future, indefinite, daily fines are purged." *Id.*

### C. The Mandate Rule

"In earliest days [the Supreme Court] consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs*, 334 U.S. at 306. Where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues. *Puricelli*, 797 F.3d 213, 218 (2d Cir. 2015) (citing *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry.*, 762 F.3d 165, 175 (2d Cir. 2014)). The "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Sompo Japan Ins. Co.*, 762 F. 3d at 175 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012)).

26

## VI.   <u>DISCUSSION</u>

For the reasons discussed below, the Court finds that (i) sanctions should be imposed on Worms in the amount of $55,000 for 55 days of noncompliance with the Discovery Order from October 3, 2019 until his contempt was purged on November 27, 2019 by virtue of the Bykov Communication; (ii) the Fees Order was properly issued pursuant to the Court's inherent authority and the FR is entitled to an award of attorneys' fees in the reduced amount of $36,600; and (iii) additional compensatory sanctions against Worms are awarded to the FR in the amount of $63,500 for attorneys' fees that would not have to have been incurred by the FR after October 3, 2019 "but for" Worms' willful bad faith conduct.

### A.  The Court Rejects Worms' Section 105(a) Argument as Frivolous

As an initial matter, the Court rejects Worms' argument that the Court is powerless to award attorneys' fees pursuant to the limitations in section 105(a) of the Bankruptcy Code. Reading the Worms Remand Brief generously, it appears to argue that this Court's inherent powers are limited to section 105(a), which, here, precludes the Court from exercising its contempt powers to award $60,000 in attorneys' fees to the FR pursuant to the Fees Order.

The District Court summarily dismissed Worms' contention that the "Bankruptcy Court'[s] inherent authority. . . cannot provide a legal basis to sanction" him.  (*Appeal Decision* at 709–710.)  Worms argued that Bankruptcy Code section 105(a) applied to violations of the Bankruptcy Code only.  (*Id.*)  Worms argued before the District Court that he could not be sanctioned because he had violated no section of the Bankruptcy Code and therefore, he could not be sanctioned.  (*Id.*)   The District Court dismissed this argument on two grounds.

First, the District Court simply noted that "[t]he majority of cases conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, have inherent civil

contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power." (*Id.* (citing 2 COLLIER ON BANKRUPTCY ¶ 105.02 (16th ed. 2020).) Second, the District Court noted that Worms' argument ignored binding circuit authority. (*Id.*) The District Court relied on the Second Circuit's ruling in *In re Sanchez* to overrule Worms' argument. (*Id.*) In that case the Second Circuit held that bankruptcy courts, like Article III courts, have "inherent sanctioning powers" with the rationale being that the power to sanction is not contingent on Article III status but is "inherent in the nature of federal courts as institutions charged with judicial functions." *In re Sanchez*, 941 F.3d at 627.

### B. The Court Imposes Per Diem Sanctions on Worms in the Amount of $55,000

As previously stated, the Court on remand must determine the sum of $1,000/day sanctions, the Per Diem Sanctions, that should be imposed on Worms. (*Appeal Decision* at 714–15.) To answer this question, the Court must determine when Worms' contempt was purged—*i.e.*, when noncompliance with the Discovery Order ceased. The FR argues that Worms still has not complied with the Discovery Order and requests Per Diem Sanctions totaling $204,000 for Worms' noncompliance from October 3, 2019 to April 24, 2020 (date the FR Remand Brief was filed). (FR Remand Brief at 7.) Worms argues that the $204,000 amount sought by the FR "is in direct contravention of the District Court's remand order which explicitly stated that 'the Court doubts the basis for continuing to hold Mr. Worms in contempt at any time after the contempt was purged—directly or indirectly.'" (Worms Remand Brief at 26.) Worms also argues that "it would violate the Mandate Rule, and be reversible error, if the Bankruptcy Court imposed sanctions upon [him] of $204,000 in contravention of the District Court's remand order." (*Id.*) Worms also appears to argue that the fact that the Per Diem Sanctions are payable to the Clerk of

the Court renders them punitive and not compensatory and are thus an unlawful penalty which must be vacated as a matter of law. (*Id.* at 26–28.)

   1. <u>Worms' Contempt was Purged via the Bykov Communication</u>

It is indisputable that Worms has done nothing to comply with the Discovery Order under which the Per Diem Sanctions were ordered. Indeed, Worms does not present facts or even attempt to argue that he has complied with the Discovery Order. However, the *Appeal Decision* provides that "[b]riefing before this Court suggests that noncompliance with the [Discovery Order] may have ceased. (*Appeal Decision* at 714.)

In response to Worms' motion to stay the Sanctions Order pending appeal, the FR describes "'a change of circumstances' insofar as 'counsel for [Bykov], who holds a power of attorney from Markus and instructs Worms, agreed that Bykov would send notices to Markus' agents to obtain documents regarding Markus' assets responsive to the [Markus Subpoena].'" (*Id.* at 714–15.) Worms urges the Court to interpret this passage from the *Appeal Decision* to mean that the "District Court has categorically stated that any contempt by Mr. Worms concerning the Discovery Order has either directly or indirectly been purged by the compliance with that Discovery Order by 'counsel for [Bykov].'" (Worms Remand Brief at 25 (quoting *Appeal Decision* at 714).) While Worms' interpretation is patently incorrect, in light of the above language from the *Appeal Decision*, the Court must determine whether Worms' contempt was purged indirectly by virtue of the Bykov Communication. (*Appeal Decision* at 714–15.)

As previously stated, at the October 17 Hearing, Mr. Singer represented that he had an agreement from Bykov to send a letter—*i.e.*, the Bykov Communication—pursuant to the power of attorney issued by Markus, requesting production of documents proposed by the FR. (Oct. 17, 2019 Hr'g Tr. at 88–89). It appears that the FR viewed Singer's proposal for Bykov to contact

29

Markus' agents to obtain documents responsive to the Markus Subpoena as an adequate substitute for Worms' compliance with the Discovery Order.  Indeed, the FR's Stay Opposition filed before the District Court states that

> because of a change of circumstances, the Markus FR does not oppose staying the $1,000 per day fine imposed for contempt after October 30, 2019, provided Worms certifies that he paid into Court the sanctioned amount of $34,000 (from September 4 through October 8) due on October 22, plus an additional $21,000 (from October 9 through 30) for a total of $55,000. At an October 17, 2019 hearing, counsel for Ilya Bykov ("Bykov"), who holds a power of attorney from Markus and instructs Worms, agreed that Bykov would send notices to Markus' agents to obtain documents regarding Markus' assets responsive to the Markus Subpoena. Because Bykov has agreed to comply with the July 30 Order enforcing the Markus Subpoena on Worms' behalf, the Markus FR does not oppose staying further penalties on Worms based on the above condition.

(FR's Stay Opposition at 6.)

While the FR's statement was clearly in connection with Worms' request for a stay of the Sanctions Order, it suggests that the FR views Bykov's compliance with the Discovery Order—contacting Markus' agents to obtain documents within Markus' "possession, custody and control" that were responsive to the Markus Subpoena—to be indirect compliance on Worms' behalf.  Indeed, the FR's offer to not oppose staying further penalties on Worms is "conditioned" upon Worms' certification that he paid to the Court the sanctioned amounts—it was ***not*** conditioned upon Worms' certification that he has or will contact Markus' agents in compliance with the Court's discovery orders.  (*Id.*)  In the FR's own words, "Bykov has agreed to comply with the July 30 Order [Discovery Order] enforcing the Markus Subpoena on Worms' behalf." (*Id.*)

The Bykov Communication Order directed the Bykov Communication be sent within seven (7) days of November 21, 2019.  (Bykov Communication Order ¶ 4.)  It is unclear as to the exact date on which the Bykov Communication was sent.  However, the FR stated that on

January 6, 2020, Bykov, through his counsel, produced 8,666 pages of documents. (Mar. 9, 2020 Hr'g Tr., District Court, ECF Doc. # 25 at 51:5–16; *see also* FR Remand Brief at 7.) The FR's statement on the record led the District Court to question "what basis [it] would have for continuing to hold Mr. Worms in contempt, either directly or indirectly, by the person whom he reports the contempt has been purged." (*Id.*)

If the Bykov Communication was sent on November 27, 2019—within seven (7) days of entry of the Bykov Communication Order—then Worms contempt would have been purged on that date, which is 55 days after the October 3, 2019 hearing at which the Per Diem Sanctions were imposed on Worms.

On remand, the FR argues that the Bykov Communication was fruitless and unhelpful because the documents produced were duplicative. (FR Remand Brief at 6–7.) The FR points to the fact that, through his own efforts, the FR uncovered additional assets which Markus concealed, including seven bank accounts at four banks holding more than $3 million in Switzerland, as well as office buildings in Germany and a hotel in Netherlands. (*Id.* at 6.) The FR argues that all of these assets, and many others, would have been disclosed by Worms by contacting Markus and her agents if he had complied with the Court's orders. (*Id.*) Generally, the FR's argument focuses on the fact that Worms has still done nothing to comply with the Discovery Order.

However, the FR cannot have it both ways—he cannot agree for Bykov to contact Markus' agents to obtain documents responsive to the Markus Subpoena as an adequate substitute for Worms' compliance with the Discovery Order then subsequently argue that Worms' should continue to be held in contempt for not contacting Markus' agents. In light of Worms' willful failure to provide discovery required by the Markus Subpoena, the FR made the

calculated decision to pursue responsive documents by other means, namely the Bykov Communication. The FR must live with his decision.

The Court hereby finds and concludes that Worms shall pay the Clerk of the United States Bankruptcy Court for the Southern District of New York Per Diem Sanctions in the amount of $55,000. That sanction is imposed on Worms for 55 days of noncompliance with the Discovery Order from October 3, 2019 until his contempt was purged on November 27, 2019 by virtue of the Bykov Communication. The sanction amount shall be paid to the Clerk within fourteen (14) days from the entry of this Opinion and Order unless stayed by an order of the District Court.

### 2.  The Per Diem Sanctions are Not Punitive

The Sanctions Order directs Worms to pay the amount of Per Diem Sanctions to the Clerk of the Bankruptcy Court. (Sanctions Order at 2.) Worms appears to indirectly argue that the fact that the Per Diem Sanctions are payable to the Clerk of the Court renders them punitive and not compensatory and are thus an unlawful penalty which must be vacated as a matter of law. (Worms Remand Brief at 26–28.) The Court rejects that argument.

The District Court held that the Per Diem Sanctions "are plainly civil." (*Appeal Decision* at 713.) The fact that the Per Diem Sanctions are payable to the Clerk of the Court does not render then punitive. In dicta, the Supreme Court has stated that a fine "is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). Further, in *Leadsinger, Inc. v. Cole*, 05 Civ. 5606 (HBP), 2006 U.S. Dist. LEXIS 55550, at *77 (S.D.N.Y. Aug. 4, 2006), the court held, *inter alia*, that a defendant who failed to

comply with an earlier court order "shall be required to pay a fine to the Clerk of the Court . . . $500 for the first violation" and that the fine would double with each subsequent violation. The Second Circuit affirmed a district court's ruling that a party's civil fines, incurred in contempt of a court order, could be payable to the United States noting that "[t]he size of these fines does not compel the conclusion that the fines are punitive and criminal in the face of the strong indications that the fines are designed to coerce compliance with the court's order, and may be escaped by defendants if they conform their conduct." *New York State NOW v. Terry*, 159 F.3d 86, 95 (2d Cir. 1998).

At any time after the Per Diem Sanctions were imposed, Worms had the opportunity to stop the ever growing fine by substantively complying with the Court's order. However, Worms' flagrant intransigence to this Court's demands increased the size of his civil sanctions and thus increased the harm to his pocketbook. Compelling payment to the Clerk of the Court is within the inherent authority of the Bankruptcy Court and falls well within the remand order of the District Court.

### 3.  The Mandate Rule Is Not Applicable

Worms' basic understanding of the Mandate Rule is correct—the Bankruptcy Court's scope on remand is limited by the District Court's remand order. As previously stated, the remand here was limited to (1) a factual inquiry to determine when the contempt was purged and thus the amount of sanctions to be imposed on Worms, and (2) a determination of whether the Fees Order was issued pursuant to proper authority. (*Appeal Decision* at 714–17.) However, Worms' willfully ignores and/or misinterprets the *Appeal Decision*.

The remand order limited this Court's charge to a factual determination of the amount of sanctions as a result of Worms' sanctionable conduct at least until the indirect purging of

contempt which occurred via the Bykov Communication. This Court has, in effect, given Worms the benefit of the doubt, and concluded that the Bykov Communication cut-off the period for which the $1,000 Per Diem Sanction applies. Worms' Remand Brief makes no argument for lessening the amount he is to be sanctioned because of any number of reasons. At the very least, Worms is right about one thing—he will need to pay the Clerk of the Bankruptcy Court for his sanctionable conduct. (Worms Remand Brief at 27.)

Moreover, Worms wrongly argues that awarding attorneys' fees would be improper because it would violate the Mandate Rule. The remand order clearly states that this Court is permitted to find proper authority for awarding attorneys' fees for the original action. (*Appeal Decision* at 714–17.) Provided that proper authority is be found, nothing in the remand order prevents this Court from awarding attorneys' fees for Worms' misconduct.

### C.  The Fees Order was Issued Pursuant to this Court's Inherent Authority

The Fees Order was vacated by the District Court and remanded for this Court to ensure, in light of the *Appeal Decision*, that the Fees Order was issued pursuant to proper authority—*i.e.*, whether the Fees Order was issued pursuant to Rule 37 of the Federal Rules of Civil Procedure or the Court's inherent authority. (*Id.*) When read together, the Fees Order and *Sanctions Opinion* clearly provide that the Fees Order was issued pursuant to the Court's inherent authority. Worms is incorrect to focus his remand argument on the authority for fees cited by the FR in his Sanctions Motion. (Worms Remand Brief at 13, 18.)

The *Sanctions Opinion* held that contempt sanctions are appropriate where a party or attorney violates court orders. (*Sanctions Opinion* at 393.) It contains an analysis of the Court's authority to punish for contempt, which extensively details both sources of authority—Rule 37 and the Court's inherent power—which permit sanctions. *Id.* The *Sanctions Opinion* states that courts have "inherent contempt authority as a power 'necessary to the exercise of all others.'"

34

(*Id.* at 394 (quoting *Bagwell*, 512 U.S. at 831 ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution.")).) It asserts that Judges must have contempt powers to ensure that there is "due and orderly administration of justice" and to maintain the authority and dignity of the Court. (*Id.* (citing *Piper*, 447 U.S. at 764.)) The opinion confirms that this necessary power includes the power to fine. (*Id.* (citing *Sigety v. Abrams*, 632 F.2d 969, 976 (2d Cir. 1980)).)

After establishing that the Court had the inherent power to hold Worms in contempt, the Court moved on to determine whether Worms should be held in contempt. (*Id*. at 395–97.) The test that the Court applied is a test based on the Court's inherent power, which may only be exercised when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." (*Id.* at 395.) Utilizing this test, the Court found that Worms' behavior satisfied all three prongs. (*Id.* at 396.) The Discovery Order requiring Worms to produce all responsive documents, including documents in the possession of Markus' agents and attorneys, are clear and unambiguous, the evidence of Worms' noncompliance is clear and convincing, and the evidence also establishes that Worms has not diligently attempted in a reasonable manner to comply with the discovery orders. (*Id.*) After concluding its analysis, the *Sanctions Opinion* states that "sanctions against Worms are appropriate in the Markus case pursuant to Rule 37 and for civil contempt." (*Id.*) Since the Court already stated that it may hold a party in civil contempt based on its inherent power, the sanctions on Worms were thus granted pursuant to both Rule 37 and civil contempt. (*Id*. at 395.)

Unlike the Sanctions Order, the Fees Order does not explicitly reference which authority the attorneys' fees are granted under. However, when awarding fees against Worms because of his "willful disregard of this Court's two discovery orders issued nearly two months ago" the Fees Order cites to the section of the *Sanctions Opinion* that applied the inherent power civil contempt test to Worms' situation. (Fees Order at 2 (citing *Sanctions Opinion* at 396–97).) As the Fees Order references the section of the *Sanctions Opinion* that analyzed the Court's inherent power, the attorneys' fees were granted pursuant to the Court's inherent authority rather than under Rule 37. (*Sanctions Opinion* at 394–97.)

In the Worms Remand Brief, Worms argues that the attorneys' fees could not have been granted pursuant to the Court's inherent authority, as the FR only asked for relief based on Rule 37. (Worms Remand Brief at 9.) While the Federal Rule is a large part of the FR's argument, in his Motion for Sanctions he cites to *Shillitani v. U.S.* for the proposition that "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." (Sanctions Motion at 21 (citing *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966)).) The FR's Motion subsequently cites to *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info., Inc*., for the proposition that "Courts have broad discretion to design a remedy that will bring about compliance." (*Id.* (citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004)).) The FR points to the Court's broad discretion to design a remedy, which encompasses the ability to shift attorneys' fees. (*Id.*)

Accordingly, the Fees Order was issued pursuant to proper authority and the Court concludes that the Court properly imposed attorneys' fees against Worms payable to the FR based on Worms' civil contempt.

## VII.     TOTAL AMOUNT OF FEES TO BE AWARDED TO THE FR

On remand, the FR asks the Court to award two sets of compensatory sanctions against Worms and award the FR attorneys' fees that the FR argues would not have incurred but for Worms' bad faith conduct.  First, the FR requests that the Court affirm the $60,000 amount awarded pursuant to the Fees Order for fees incurred in the initial proceeding before this Court. (FR Remand Brief at 5.)  Second, the FR requests that the Court impose $115,000 in additional compensatory sanctions against Worms for attorneys' fees that the FR argues would not have been incurred after October 3, 2019.  (*Id.*)  For the reasons discussed below, the Court agrees with the FR that both sets of compensatory sanctions are warranted.  But the Court disagrees with the FR about the amounts of fees that should be awarded at this stage of the case.

The FR submits that the Court's inherent power extends to awarding attorneys' fees incurred defending the Sanctions Motion after October 3, 2019, including on appeal, and that the FR incurred fees of $115,000, which were reasonable and necessary.  (*Id.* at 8, 11.)  The FR argues that the fees are reasonable because he successfully defeated Worms' appeal of both the Sanctions Order and Fees Order.  (*Id.* at 11–12.)  The FR argues that the fees are necessary because they would not have been incurred but for Worms' bad faith misconduct.  (*Id.* at 12.) The FR supports his argument in favor of awarding additional attorneys' fees with caselaw standing for the proposition that the FR need only show the fees requested "'would not have been incurred but for the bad faith'" of Worms, the contemnor.  (*Weitzman*, 98 F.3d at 719 (quoting *Goodyear*, 137 S.Ct. at 1184).)  The Court already found in its *Sanctions Opinion* that Worms engaged in willful misconduct.  Much ink has already been spilled describing Worms' persistent misconduct.  There is no need to repeat it here.  Suffice it to say, the Court's award of

attorneys' fees fairly compensates the FR for attorneys' fees incurred for the FR's successful arguments in obtaining the sanctions orders.

As detailed below, the Court finds that the FR overstates his success on appeal and incorrectly alleges that nearly all of Worms' conduct since October 3, 2019 is willfully frivolous and rooted in bad faith. The *Appeal Decision* appears to question whether the full $60,000 in fees awarded in the initial proceeding is appropriate due to limited success of the FR's argument. (*See Appeal Decision* at 716–17.)

Accordingly, the Court reduces the award of attorneys' fees to the FR, principally limiting the fee award to the legal work on the arguments that were successful on the appeal to the District Court. The Court awards the FR attorneys' fees in the amount of $36,600 for the work done in the bankruptcy court, which is $23,542 less than originally requested and awarded pursuant to the Fees Order. The Court also awards the FR attorneys' fees in the amount of $63,500 for legal work on the successful arguments on the appeal to the District Court, which is $51,500 less than the $115,000 requested.

### A. The FR Should Recover Fees Only for Successful Arguments in the Initial Bankruptcy Court Proceeding and on Appeal

Precedent supports awarding attorneys' fees in circumstances such as those present here. *Hensley v. Eckerhart*, 461 U.S. 424, 425 (1983).[3] If a plaintiff prevails on one claim but not the others, the Court must address two questions: (1) whether the plaintiff failed to "prevail on claims that were unrelated to the claims on which he succeeded" and (2) whether the plaintiff

---

[3] It is important to note that *Hensley*, which establishes the test for dealing with parties who were successful on only some of their claims, and the cases that follow are based on statutes meant to protect Civil Rights. These statutes explicitly provide for the reimbursement of attorneys' fees to the prevailing party. *See, e.g.*, 42 U.S.C. § 1983. The FR cites this line of cases as authority that his fees should not be reduced. (FR Remand Brief at 11–12.) But there is also caselaw citing the same line of cases that justify the reduction of attorneys' fees within the Bankruptcy Court. *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pr. No. 08-01789 (SMB), 2020 Bankr. LEXIS 724, at *53 (Bankr. S.D.N.Y Mar. 20, 2020) (reducing attorneys' fees awarded pursuant to Rule 37 because of vague time records).

"achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. The "court may exclude any hours spent on severable unsuccessful claims . . . , those that are distinct in all respects from the successful claims," from the total attorneys' fees incurred. *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004). However, if the claims "involve a common nucleus of facts or are based on related legal theories," attorneys' fees may be recovered for both the successful and unsuccessful claims. *Id.* The reasoning is that it is difficult to divide hours spent on each claim since the attorney's time will be devoted generally to the litigation as a whole. *Hensley*, 461 U.S. at 435.

If the claims are related and not severable, the court must focus on the level of success achieved by the plaintiff. *Id.* If a plaintiff has achieved only partial or limited success, awarding the full amount of fees may be excessive, even if the claims were "related, not frivolous, and raised in good faith." *Id.* at 436. In contrast, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. *Id.* at 439. To determine the prevailing party's degree of success, a court must consider the quantity and quality of relief obtained as compared to what the plaintiff sought to achieve, as evidenced by their complaint. *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997).

The Second Circuit has applied this test to reduce attorneys' fees of the prevailing party. *See Green v. Torres*, 361 F.3d (upholding a ruling for a reduction of attorneys' fees by 20% because several of the claims were overbroad and withdrawn after substantial discovery had been completed). Courts also reduce fees when plaintiffs received only portion of the injunctive relief and damages sought. *See, e.g.*, *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 256 (E.D.N.Y. 2020) (reducing fees by 40% where a Plaintiff only received a small portion of the injunctive relief and damages sought).

39

1.  The Successful and Unsuccessful Claims on Appeal are Interrelated

The FR partially succeeded on Worms' appeal of the Sanctions Order and Fees Order.

Notably, and tellingly, the *Appeal Decision* first addresses an issue common to both appeals: the

FR's argument that Worms can be sanctioned under Rule 37.  (*Appeal Decision* at 701–05.)

Ultimately, Judge Liman rejected the FR's argument and held that the FR cannot use Rule 37 to

hold Worms in contempt as an attorney for a person who was served with a Rule 45 subpoena.

(*Id.* at 704.)  Judge Liman emphasized that this Court's inability to sanction Worms under Rule

37 is relevant to the Sanctions Order and the Fees Order.  (*Id.*)  With respect to the Sanctions

Order, Judge Liman affirmed the $1,000 Per Diem Sanctions, but only to the extent that they

were imposed pursuant to the Court's inherent authority.  (*Id.* at 714–15.)  Judge Liman vacated

the portion of the Sanctions Order imposing the retroactive $34,000 Lump-Sum Sanctions as

improperly criminal in nature.  (*Id.*)  With respect to the Fees Order, Judge Liman affirmed the

factual basis for awarding the FR $60,000 in attorneys' fees but vacated the Fees Order and

remanded for the Court to ensure that it was issued pursuant to the proper authority.  (*Id.* at 716–

17.)

The FR argues that he prevailed entirely on his claim and was wholly successful on

appeal as he received the full $60,000 in attorneys' fees and the full $1,000 Per Diem Sanctions.

(FR Remand Brief at 11–12.)  However, a large majority of the work completed since the

inception of the FR's case for sanctions and to hold Worms in contempt related to the ultimately

unsuccessful legal theory under Rule 37, despite the success of the overall relief sought.

Ultimately, the Court has discretion in determining the amount of a fee award in order to avoid

frequent appellate review, as long as the Court provides a concise but clear explanation of its

reasons.  *Hensley*, 461 U.S. at 437.  The Court may "attempt to identify specific hours that

should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

       2.  <u>Discretionary Reduction in Fees before the Bankruptcy Court and on Appeal to Account for Time Spent on Rule 37 and Rule 45 Research</u>

The invoices in the Initial Declaration in Support of Attorney's Fees and the FR's Brief on Remand have several explicit references to the unsuccessful legal theories. These include: "Review Worms Rule 37 reply" and "Review cases for letter briefing that objectors to Ch. 15 recognition are parties to the case; research law review articles supporting proposition that entities in contested matters in bankruptcy are parties." (*See, e.g.*, FR Remand Brief, Ex. 2 at 33; Marks Declaration in Support of Attorneys' Fees. Ex. 1 at 4.) On the other hand, there are also several line items that are not as clear, such as "Researched/Reviewed/Analyzed caselaw, statutes and rules; Reviewed/Revised/Finalized Appellee brief", or line items that reference both unsuccessful and successful legal theories such as "Reviewed/Revised letter brief to Court re additional caselaw on Rule 37, Rule 45 and court's inherent powers." (*See, e.g.*, FR Remand Brief, Ex. 2 at 25, 32.) Under the circumstances, the Court concludes that reducing the FR's fees by subtracting specific line items would lead to an inequitable result.

The Court concludes that it is more appropriate to reduce the fee award by dividing the FR's work into parts that should be fully reimbursed and parts that should be reduced by a factor taking into account the successful and unsuccessful arguments.

       *a.  Fees Incurred in the Bankruptcy Court Proceeding*

The FR divided his initial Fee Application to the Bankruptcy Court into requested amounts by matter as set forth in the table below and totaling $77,898. (Marks Declaration in Support of Attorneys' Fees ¶ 50.)

| | Matter | Amount |
|---|---|---|
| 1 | Preparing subpoena to be served on Larisa Markus | $ 4,670 |
| 2 | Preparing reply to Mr. Worms regarding stay of discovery | $ 380 |
| 3 | Communications with Mr. Worms regarding his failure to produce documents pursuant to the subpoena | $ 2,450 |
| 4 | Conducting meet and confer with Mr. Worms pursuant to the hearing held on July 23, 2019 | $ 9,270 |
| 5 | Preparing Motion for Sanctions against Mr. Worms and Larisa Markus | $ 16,500 |
| 6 | Drafting Reply to Mr. Worms' objections to the Motion for Sanctions | $ 15,300 |
| 7 | Preparation for and participation in July 23 hearing | $ 2,420 |
| 8 | Preparation for and participation in September 9 hearing | $ 3,140 |
| 9 | Preparation for and participation in October 3 hearing | $ 23,768 |
| | Total: | $ 77,898 |

In the Fee Declaration, however, the FR only requested an award of $60,000 (*id.* ¶ 58), rather than the full amount billed of $77,898—a voluntary reduction that cannot be tied to specific matters based on the detail, or lack thereof, provided in the Declaration. To arrive at a factor by which the FR's fees should be reduced, the Court will first conduct a fee reduction analysis on the full amount billed by the FR, then apply the resulting reduction factor to the requested amount of $60,000.

The FR should receive full credit on matters 1, 2, 3, and 4: "Preparing subpoena to be served on Larisa Markus," "Preparing reply to Mr. Worms regarding stay of discovery," "Communications with Mr. Worms regarding his failure to produce documents pursuant to the subpoena," and "Conducting meet and confer with Mr. Worms pursuant to the hearing held on July 23, 2019." (*Id.*) These matters relate to the factual bases for which Worms acted contemptuously by stalling discovery, necessitating the preparation of the subpoena and the subsequent communications and required replies. These costs were incurred prior to the FR's Motion for Sanctions and should not be reduced due to the Court's inability to sanction under Rule 37. The Court concludes that the FR's fees of $16,770 for these matters should not be reduced.

42

The Court has divided the remaining matters into four components, encompassing the categories of arguments the FR made—(1) contempt, (2) Rule 37, (3) Rule 45, and (4) fees. The FR successfully established that Worms should be held in civil contempt and that fees were appropriately imposed. The FR was not successful on his Rule 37 and Rule 45 arguments. Since the FR was successful on two of the four components of the case, the Court concludes that the fees requested for these matters should be discounted by a factor of one-half. The partially successful matters are— "Preparing Motion for Sanctions against Mr. Worms and Larisa Markus," "Drafting Reply to Mr. Worms' objections to the Motion for Sanctions," "Preparation for and participation in July 23 hearing," " Preparation for and participation in September 9 hearing," and "Preparation for and participation in October 3 hearing." (*Id.*) Therefore, the Court concludes that the FR's fees of $61,128, on matters 5, 6, 7, 8, and 9 should be reduced by half to $30,564. (*Id.*)

Taking the full amount of $77,898 billed by the FR, the Court finds that the FR would be awarded: $16,770 plus $30,564 for a total of $47,334, a 39% reduction. However, the FR only requested $60,000 in fees. (*Id.* ¶ 58.) Accordingly, the Court applies a 39% reduction to the FR's requested amount of $60,000 and awards the FR $36,600 for fees incurred with respect to the initial bankruptcy proceeding.

### b. *Fees on Remand*

The Court has applied the same methodology to determine the fees that should be awarded in connection with the work done on the appeal to the District Court. The FR divided his Fee Application regarding time spent before the District Court into requested amounts by matter, as set forth in the following table:

| | Matter | Total Hours | Billed Amounts | Requested Amounts |
|---|---|---|---|---|
| 1 | FR Fees Application with supporting Marks First Fees Declaration | 25.75 | $ 7,825.00 | $ 7,000.00 |
| 2 | Reply to Worms' Response to FR Fees Application | 15.50 | $ 5,362.50 | $ 5,000.00 |
| 3 | Response to Worms' Motion to Stay Sanctions Order | 54.60 | $ 14,022.50 | $ 12,000.00 |
| 4 | Response Omnibus Brief in opposition to Worms' Appeal Briefs | 151.50 | $ 38,320.00 | $ 35,000.00 |
| 5 | Preparation for March 9 Hearing | 81.60 | $ 20,255.00 | $ 18,000.00 |
| 6 | Post Hearing Court Ordered Submission | 64.50 | $ 18,212.50 | $ 15,000.00 |
| 7 | Remand Submission | 81.20 | $ 25,345.00 | $ 23,000.00 |
| | **Total:** | **474.65** | **$129,342.50** | **$ 115,000.00** |

The FR discounted the billed amounts "to take a conservative approach." (FR Remand Brief at 12.)[4] The FR is also not seeking $11,520 incurred in fees for matter 3: "Response to Worms Motion to Stay Sanctions Order" because much of the work for opposing the stay was used by the FR in Appellee's brief related to the fees appeal. (*Id.* at n.5.) Worms Motion to stay the Sanctions Order was denied and can be considered a full success for the FR. (ECF Doc. # 169 at 1.) The Court concludes that the FR should receive the full requested amount of $12,000 for matter 3. (FR Remand Brief at 12.)

The Court concludes that the amount awarded for the remaining matters should be discounted by a factor of one-half to account for the unsuccessful legal arguments, using the same four-part breakdown that applied to the initial bankruptcy proceeding. Applying a similar analysis, after carefully analyzing the time recorded, the arguments of both the FR and Worms,

---

[4]     Unlike the fees requested in connection with the initial bankruptcy proceeding, the FR chose to reduce the fees requested on remand on a line item basis.

and carefully considering the FR's successful and unsuccessful arguments on the appeal, the Court awards the FR additional fees of $63,500.[5]

In sum, the Court finds and concludes that the FR is awarded a total of $100,100 in attorneys' fees, $36,600 for the initial bankruptcy proceeding and $63,500 for the appeal.

### B.  The Court Declines to Consider Worms' Financial Circumstances

The Court believes it is appropriate to consider whether Worms' financial circumstances need to be formally addressed by the Court.  As previously stated, Worms does not contend that the $1,000 Per Diem Sanctions are more burdensome on him due to his financial circumstances. The Court set that amount considering the seriousness of Worms' persistent misconduct, and the effect that misconduct had on the fair administration of this case.  The $1,000 per day sanction was indeed intended to be coercive.  Worms simply chose to help his client, Larisa Markus, who was convicted and jailed in Moscow for embezzling approximately $2 billion from a Russian bank, in her effort to keep her assets out of sight and away from the FR's efforts to recover the assets.  Millions of dollars of Markus' assets were transferred to the United States; millions more were transferred to other countries as well.  Worms apparently wasn't concerned that $1,000 per day was enough of a sanction to compel compliance with discovery orders that required disclosure of the whereabouts of Markus' assets.

Rather, Worms argues that the $1,000 Per Diem Sanctions are unlawful and must be vacated as a matter of law because the Court, in the *Sanctions Opinion*, did not apply or analyze the following three factors that courts in the Second Circuit must consider before imposing sanctions for civil contempt:  (1) the character and magnitude of the harm threatened by the

---

[5]    This figure is arrived at by taking the total amount requested of $115,000 (a) subtracting $12,000 billed for successful matter 3, (b) dividing that resulting figure of $103,000 by half to arrive at $51,500, then (c) adding $12,000 to $51,500 to arrive at the resulting award of $63,500.

continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about

compliance; and (3) the contemnor's financial resources and the consequent seriousness of the

burden of the sanction upon him.  (Worms Remand Brief at 28–29 (quoting *Dole*, 821 F.2d at

110).)  Worms' argument rests on the fact that the Court did not "explicitly consider" Worms'

financial circumstances before imposing the sanctions, which Worms interprets *Dole* to require.

(*Id.*)

Worms' argument rests on a misunderstanding of *Dole* and its progeny, the *Appeal*

*Decision*, and the scope of issues on remand from the District Court.  In *Dole*, the Second Circuit

restated the three factors that courts should consider before imposing coercive sanctions by

quoting from the decision in *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d

Cir. 1982).  In that case, the Second Circuit, immediately after listing the three factors to be

considered, stated the following: "[u]ltimately, however, the overriding consideration is whether

the coercive fine was reasonably set in relation to the facts and was not arbitrary."  (*Id.*)  Worms'

argument ignores this overriding consideration, which was also set forth in the *Sanctions*

*Opinion* immediately following the Court's statement of the three factors.  *Sanctions Opinion* at

396 ("In determining the proper sanction, '[t]he ultimate consideration is whether the coercive

sanction . . . is reasonable in relation to the facts.'") (citing *Nat. Organization for Women v.*

*Terry*, 886 F.2d 1339, 1351–52 (2d Cir. 1989)).

Indeed, Worms made this very same argument on appeal and it was rejected by Judge

Liman in the *Appeal Decision*, which provides that:

> Worms argues, in one paragraph at the end of his brief, that the Bankruptcy
> Court committed reversible error by not considering Worms's financial
> circumstances before sanctioning him.  He references language from *New*
> *York State Nat. Org. for Women v. Terry* directing that a court "should"
> consider, among other factors, the "contemnor's financial resources."  886
> F.2d at 1353.  Although the Bankruptcy Court may not have specifically

inquired into Worms's financial position, the amount of sanctions and its proportionality to Worms's conduct reflects consideration of the circumstances. Furthermore, the Sanctions Opinion specifically cites "the contemnor's financial resources" as a factor to consider when imposing sanctions, which indicates that the Bankruptcy Court took it into account. BK-ECF 162 at 22. *The Court discerns no abuse of discretion on this point*.

(*Appeal Decision* at 714 n.16) (emphasis added.)

Accordingly, Worms' financial condition is not an issue before the Court on remand.

## VIII. CONCLUSION

For the reasons discussed above, the Court finds and concludes as follows:

(1) Worms shall pay sanctions to the Clerk of the United States Bankruptcy Court for the Southern District of New York in the amount of $55,000 for 55 days of noncompliance with the Discovery Order from October 3, 2019 until his contempt was purged on November 27, 2019 by virtue of the Bykov Communication. The sanctions shall be paid within fourteen (14) days from the date of the entry of this Opinion and Order unless payment is stayed by the District Court;

(2) The Court's Fees Order was properly issued pursuant to the Court's inherent authority. Based on the analysis explained above, the amount of the attorneys' fee award to the FR based on the work done by counsel to the FR in this Court has been reduced. Worms shall pay the FR the sum of $36,600 within fourteen (14) days from the date of the entry of this Opinion and Order unless payment is stayed by the District Court; and

(3) Additional compensatory sanctions are awarded to the FR against Worms in the amount of $63,500, for attorneys' fees incurred in connection with the successful arguments made by the FR's counsel in the District Court after October 3, 2019 "but for" Worms' willful conduct. Worms shall pay this sum to the FR within fourteen

(14) days from the date of the entry of this Opinion and Order unless payment is
stayed by the District Court.

**(4)** The Court reserves jurisdiction to consider such other and further relief as may be
appropriate in the event that Worms fails to comply with this Court's order.

**IT IS SO ORDERED.**

Dated:  August 3, 2020
     New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge